# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JOHNNY FLORES,

                      Plaintiff,

    v.                                             6:14-CV-1544
                                                     (DNH/ATB)

SILVANO ROMAN, et al.,

                      Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JOHNNY FLORES
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Johnny Flores. (Dkt. Nos. 1, 2).

## I.    IFP Application

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Facts

Based upon the facts as stated by plaintiff, it is unclear what plaintiff is attempting to allege. He states that "[b]ack in 2006," he faxed some papers from a fax

machine, belonging to defendants Silvano Roman and Sonia Rodriguez. (Complaint "Compl." at 1). Plaintiff claims that these two defendants were the "first witnesses" to his invention, and "apparently they disclosed information of [his] invention to the public without my permission." (*Id.*) Plaintiff states that between 2007 and 2008, he went to the police department to complain that "something" was going to happen in the future due to the defendants' disclosure of this information.

In May of 2013, there was a "raid" due to "drug problems," and the Observer-Dispatch newspaper published a picture showing a "homemade barricade," using what plaintiff refers to as the "Amazing 2 x 4." Plaintiff claims that this "shows" a part of his "invention" that was "stolen" by defendants Roman and Rodriguez. Plaintiff claims that he complained to Assemblyman Anthony Brindisi. Plaintiff also states that in August of an unknown year, there was a fire at House # 3 in Utica.[1] Plaintiff claims that the firemen could not break the doors down with a sledge hammer because of the "barricade" that was blocking the door where the fire started. (Compl. at 2). Plaintiff told the fire department that defendants Roman and Rodriguez put the barricade on the door intentionally. *Id.*

When the fire was completely out, plaintiff went to "investigate" himself. (Compl. at 3). He states that he saw the barricade and the "holes to the hinges exactly made of [his] invention that was stolen." (*Id.*) Plaintiff claims that he told defendant Roman that what he did "in regards to the barricade" was "wrong." Plaintiff claims that

---

[1] This court has determined by looking at the proposed summonses, that Augar P.L. House # 3 is the residence of defendants Roman and Rodriguez. (Dkt. No. 2-1, 2-3).

people's lives could be in danger and that, because a picture of the barricade was in the newspaper, drug dealers could use "this" and put people's lives at risk. The plaintiff asks that the court "contact" Oneida County District Attorney McNamara. Plaintiff also states that "this is also with Invent Help Beverly Stack Representative to my Idea." (Compl. at 4).

## III. Discussion

When a plaintiff is pro se, the court must interpret the complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Based upon the facts stated above, determining what plaintiff might be trying to allege in this case is very difficult. He talks about an "invention" and about defendants Rodriguez and Roman "apparently" disclosing information about this invention to the "public." Plaintiff bases this allegation only upon the fact that in 2006, he faxed some documents from defendants' fax machine, and that they were the "first witnesses" to his invention.

Plaintiff does not allege that he had a patent on this "invention," which he refers to as the "Amazing 2 x 4." Thus, plaintiff does not state a claim for direct[2] patent infringement pursuant to 35 U.S.C § 271, which at a minimum requires that plaintiff

---

[2] There are also other types of patent infringement that are even less relevant to this action. *See Gradient Ents., Inc. v. Skype Technologies S.A.*, 848 F. Supp. 2d 404, 408-409 (W.D.N.Y. 2012) (discussing direct versus indirect patent infringement and discussing the applicability of the *Ashcroft/Twombly* standard to each type). This plaintiff would fail to state a claim for patent infringement under any standard.

4

identify a patent that he owns; and allege that defendants have been infringing the patent by making, selling, and using the device embodying the patent; that the plaintiff has given the defendants notice of the infringement; and a demand for an injunction and damages. *Gradient Ents., Inc. v. Skype Technologies S.A.*, 848 F. Supp. 2d 404, 407 (W.D.N.Y. 2012) (citing Form 18 of the Appendix of the Fed. R. Civ. P. – Complaint for Patent Infringement).

At best, this complaint could be interpreted as alleging some sort of violation of trade secret protection. Unlike patents, trademarks, and copyrights, trade secrets, to the extent that they are protected, are generally protected under state law. *See Speedry Chemical Products, Inc. v. Carter's Inc. Co.*, 306 F.2d 328, 330 (2d Cir. 1962); *Licata & Co., Inc. v. Goldberg*, 812 F. Supp. 403, 409 (S.D.N.Y. 1993) (unlike patents, trade secrets are not protected from use by others absent breach or knowingly taking advantage of a breach of contract by others).

While there is a "property right" in trade secrets, and this right may be protected against those who acquire and use the knowledge thereof wrongfully, there is no exclusive right against another who discovers the secret by fair means, or "against those who acquire knowledge of [the trade secret] without a breach of contract or of a confidential relationship with the discoverer." *Id.* (citing *Ferroline v. General Aniline & Film Corp.*, 207 F.2d 912 (7th Cir. 1953); *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446 (6th Cir. 1942); Nims, Unfair Competition and Trade-Marks, 4th Ed. p. 418). The plaintiff must also show that he took "substantial measures to protect the secret nature of [the] information." *Big Vision Private Ltd. v.*

*E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 267 (S.D.N.Y. 2014) (citing *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F. Supp. 955, 961 (S.D.N.Y.1996) (internal citation omitted)).

Plaintiff has alleged no facts that would even remotely support a claim based upon the theft or improper use of trade secrets, and in any event, there is no jurisdiction in federal court to assert state law claims without any other basis for federal court jurisdiction. Plaintiff alleges that in 2006,[3] he faxed some "papers" from defendants' house, and that they were the first witnesses to his "invention." He does not allege that he attempted to keep some information confidential. Then plaintiff makes the assumption that these people disclosed information about his invention to the public without his permission. Even if this were true, there is no indication that these two defendants had a contract with, or any confidential relationship to, plaintiff that would prevent them from disclosing information that they learned from plaintiff about his invention. Additionally, plaintiff does not state what the defendants disclosed to "the public" or how the disclosure might have occurred. He claims that his invention is the "Amazing 2 x 4," but does not state what particular information was disclosed and how the defendants acquired this information, other than being the first "witnesses" to the

---

[3] The court also notes that if the alleged "disclosure" was in 2006, and plaintiff brings this action in 2014, the claim (whatever it might be) is likely barred by the applicable statute of limitations. The court does not rely on the statute of limitations because it is so difficult to determine what plaintiff might be alleging. In any event, if plaintiff were relying on some type of contract claim, the statute of limitations in New York State for contract actions is six years. *See St. John's University, New York v. Bolton*, 757 F. Supp. 2d 144, 163 (E.D.N.Y. 2010) (under New York law a cause of action to enforce a contractual obligation accrues and the statute of limitations begins to run when the contract is breached) (citing N.Y. Civ. Prac. L & R. § 213(2)).

invention.

The incidents that followed this alleged improper disclosure were apparently plaintiff's attempt at claiming that damages flowed from the defendants' improper acts. Plaintiff states that he went to the police department in 2007 and 2008 to warn them that "something" was going to happen which related to this disclosure. Then, in 2013, approximately seven years after the alleged disclosure, a barricade, made with the "Amazing 2 x 4" was on the front page of the newspaper, showing "part of [plaintiff's] invention that was ***stolen*** by these individuals" (Compl. at 2) (emphasis added). Plaintiff also alleges that defendants Roman and Rodriguez used a similar barricade to block their door so that fireman could not get in to their burning home.

In addition to defendants Roman and Rodriguez, who allegedly disclosed the information about plaintiff's invention, he has included summonses for the State of New York and Scott McNamara, the Oneida County District Attorney. It is unclear why plaintiff would have included the State of New York as a defendant.[4] It may be because he states that he complained to Assemblyman Anthony Brindisi "at the State Office Building." (Compl. at 2). With respect to Scott McNamara, the complaint only requests that the court "contact" this individual. Plaintiff does not allege that DA

---

[4] In any event, the Eleventh Amendment bars suits against the state, state agencies, and state officers in their official capacities. *See Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001). Exceptions to Eleventh Amendment immunity exist if the state waives immunity and consents to suit in federal court or if Congress abrogates the state's immunity by statute. *Id.* at 69-70. When the issue is waiver of immunity, the state's consent to suit must be "unequivocally expressed." *Penhurst*, 465 U.S. at 99. There is no indication in this case that the state has waived its immunity or that Congress has abrogated the states immunity in any way. Thus, the State of New York would be dismissed as a defendant based upon Eleventh Amendment immunity.

McNamara was in any way involved in any part of this case. Plaintiff also fails to request any kind of relief, either monetary or equitable.

Plaintiff's complaint is an example of a frivolous filing that lacks an arguable basis in fact or in law and should be dismissed. To the extent that some sense can be made out of plaintiff's ramblings, it is clear that there is no basis for his claims.

### A. Jurisdiction

In addition to being completely meritless, there would be no jurisdiction to hear this case. Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012); *Henderson ex rel. Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202 (2011)). Federal courts are mandated to sua sponte examine their own jurisdiction at every stage of the litigation. *Id.*

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1332 provides that the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between "citizens of a State and citizens or subjects of a foreign state . . . ." 28 U.S.C. § 1332(a)(2). A party asserting diversity jurisdiction must assert "complete" diversity in the complaint. *Aleph Towers, LLC v. Ambit Texas, LLC*, No. 12-CV3488, 2013 WL

8

4517278, at *3 (E.D.N.Y. Aug. 23, 2013). Complete diversity means that all defendants must be of diverse citizenship to plaintiff. *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) (complete diversity required between all plaintiffs and all defendants).

In this case, there is no diversity because plaintiff is a resident of New York State and all defendants are residents of New York State. Plaintiff has cited no federal constitutional or statutory law upon which he bases his complaint. In fact, he has cited no law upon which he bases his complaint. He did not complete a Civil Cover Sheet when he filed this action, and therefore, there is no indication of what law he believes has been violated. The federal courts are granted supplemental jurisdiction over state law claims that are so related to the claims that are within the court's original jurisdiction, that they form part of the same case or controversy under the federal Constitution. 28 U.S.C. § 1367(a). However, in this case there are no claims that are within the court's original jurisdiction, and supplemental jurisdiction over the potential state law claims does not exist.

## IV. Opportunity to Amend

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt of the plaintiff to amend this complaint would be futile, and she would still be unable to state a federal claim.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-iii) as frivolous, for failure to state a federal claim, and based upon Eleventh Amendment immunity as to New York State, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 24, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge